[Crim. No. 3.   Third Appellate District.—May 24, 1905.]

## THE PEOPLE, Respondent, v. OSCAR OLSEN, Appellant.

CRIMINAL LAW—MURDER—CIRCUMSTANTIAL EVIDENCE—REMARKS OF JUDGE IN IMPANELING JURY—ERROR NOT PREJUDICIAL.—Where, during the impaneling of the jury, upon an information for murder, after six jurors had been accepted and sworn, and after another juror had stated on his *voir dire*, in answer to a question, that he would have to be pretty well convinced, especially in circumstantial evidence, as he had seen one case go wrong on circumstantial evidence, the remarks of the judge that ''That is one case out of ten thousand,'' with other words to the same effect, though highly improper, were not found in an instruction to the jury, and could have no other effect than to impress upon their minds that circumstantial evidence was to be considered and that conviction could be had upon such evidence, and the error, if any, was not of a nature to injure the defendant.

ID.—SUFFICIENCY OF CIRCUMSTANTIAL EVIDENCE.—Where the evidence was circumstantial, but the circumstances all point to the defendant's guilt, and were sufficient to indicate it, and defendant attempted no explanation of them, a verdict of guilty, showing that the jury must have believed him guilty beyond a reasonable doubt, is sufficiently supported.

ID.—EVIDENCE—SHOES AND OVERALLS OF DEFENDANT—HUMAN BLOODSTAINS.—The shoes and overalls of the defendant, identified as those belonging to him and worn at the time of the murder, and appearing to have human blood-stains upon them, were properly introduced in evidence over defendant's objection.

ID.—EXPERT EVIDENCE—NATURE OF WOUNDS—USE OF BLUNT INSTRUMENT.—Where the physician who made the autopsy of the body of deceased described the nature of the injuries sustained as being sufficient to produce death and necessarily fatal, and described contused wounds and a bruised condition of the body, and the jury were authorized to infer from the evidence and the description of the wounds that the wounds were produced by the heels of the defendant's bloody shoes, it was not error to permit the physician to testify that the wounds must have been caused by some blunt instrument.

ID.—INSTRUCTIONS — CIRCUMSTANCES — REASONABLE DOUBT. — Where proper instructions are given as to the law of reasonable doubt, as applied to circumstantial evidence, an instruction on that subject in the form approved in *People* v. *Anthony*, 59 Cal. 397, is not error, though the words ''although the act may be surrounded in a degree by a doubt'' might be properly omitted as meaningless. An instruction ''that each and every fact and circumstance relied on by the

prosecution to establish the guilt of the defendant must be proved by the evidence beyond a reasonable doubt, and if the jury are not entirely satisfied beyond all reasonable doubt that such fact and circumstance has been proven, it is your duty to find a verdict of not guilty,'' is favorable to the defendant, and when construed with other correct instructions given on that subject the defendant cannot complain.

ID.—REFUSAL OF INSTRUCTIONS.—It was not error to refuse instructions requested by the defendant where all the matter contained in them is found in other instructions given by the court.

APPEAL from a judgment of the Superior Court of Sacramento County and from an order denying a new trial. E. C. Hart, Judge.

The facts are stated in the opinion of the court.

J. O. Prewett, and J. S. Daly, for Appellant.

U. S. Webb, Attorney-General, and C. N. Post, Assistant Attorney-General, for Respondent.

BUCKLES, J.—Defendant was informed against by the district attorney of the county of Sacramento for the crime of murder, alleged to have been committed in the city of Sacramento on the sixth day of February, 1904, by killing one Henry Salt. He was tried, found guilty of murder in the first degree, with punishment fixed for life in the state prison. Appeal is from the judgment and order overruling his motion for a new trial.

During the examination of the jurors on their *voir dire,* and after six persons had been accepted and sworn to try the case, and while the examination of juror Campbell was progressing, Campbell remarked, in answer to a question, that he would have to be pretty well convinced, especially in circumstantial evidence, because he had seen one case go wrong in Sacramento on circumstantial evidence, the judge remarked, ''That is one case out of ten thousand; one out of ten thousand; that is about the rate.'' And further on in the examination of Campbell, when defendant's attorney called the court's attention to this remark, the judge replied. ''I say so yet.'' This is assigned as error. It is claimed by the defendant that the remarks of the court were in effect charging the jury as to the weight and reliability of circumstantial

evidence, and that out of ten thousand convictions in Sacramento County on circumstantial evidence one was innocent and nine thousand nine hundred and ninety-nine were guilty. This was assigned as error on the part of the trial judge. The statement of the judge was highly improper and might well have been left unsaid. The first case cited by defendant in support of his contention is that of *People* v. *Fong Ching,* 78 Cal. 173, [20 Pac. 396]. In that case the defendant was on trial for having offered policeman Martin a bribe to induce Martin to testify falsely in a murder trial. The defendant testified in his own behalf and said he had given Martin several sums of money amounting to about four hundred dollars, but that it was for his friendship and to induce him to testify merely to the truth and not to testify falsely against one Lee Chuck in a murder case. The judge said to the jury in one of his instructions: "If you believe the defendant's version, your verdict should be not guilty. It is not a crime in this state to encourage a witness with pecuniary gifts to be truthful, but neither *is it among the recognized customs of this country to subsidize the personal integrity of our citizens in order to prevent them from lapsing into falsehood and perjury.*" The court said: "This language could have but one meaning and purpose. In addition to incorporating an unproved fact into the case, it was an argument against the truthfulness of the defendant's testimony, and its direct tendency was to induce the jury not to believe it." This was an attempt on the part of the judge to instruct the jury as to the weight to be given the defendant's testimony, and was clearly error.

In *People* v. *Travers,* 88 Cal., at page 236, [26 Pac. 89], cited by defendant, the court told the jury in its charge, "During the argument of this case your attention has been called to a number of cases in which it was claimed that juries had improperly convicted the defendants. While it is true that innocent persons have been convicted in the past, there is no proof in this case of any such fact, *and you are not justified in considering* such matters in determining the guilt or innocence of this defendant. . . . If all criminals must go free because there is a possibility of jurors making mistakes, society might as well disband."

The court said: "This instruction is clearly erroneous. In

the first place it is objectionable—although perhaps not fatally so—on account of its apparent hostility to the defendant. The jury would be very apt to get the impression from it that the court considered the defendant one of the 'criminals' alluded to, and feared the jury would fail to convict him on account of 'sympathy or prejudice.' In the second place, it is objectionable as an argument in favor of the prosecution on the weight of evidence, and thus was an invasion of the province of the jury."

In the case at bar the words complained of were not found in an instruction to the jury, but a remark of the court during the impaneling of the jury, and could not have had any other effect than to impress upon the minds of the jurors the fact that circumstantial evidence was to be considered and that conviction could be had on such evidence, and therefore not subject to the criticisms made in the cases cited. Therefore, the error, if any, was not of a nature to injure the defendant. (*People* v. *Urquidas,* 96 Cal. 239, [31 Pac. 52].)

It is claimed by the defendant that the evidence in the case is totally inadequate to convict him. The testimony is circumstantial, but the circumstances all point to the defendant's guilt, and are as follows: The defendant and deceased were seen together on I Street drunk, arm in arm, puddling in the mud. They went to an open box-car standing on I Street and the defendant helped deceased into the car and went away, leaving the door open. This was 12:45 P. M. A boy eleven years old had seen the defendant and two or three men together near China Slough, near Third and I streets, at 11:55 A. M., and the defendant was sitting on the stomach of deceased, and whenever deceased made an effort to get up, defendant would hit him in the jaw. The boy saw the two or three men leave and the deceased still on the ground. This witness was not positive in his identification of defendant or deceased. At about 1:15 defendant was seen at a saloon at No. 229 I Street and there was blood on his hand. The car door was open at 1:20 or 1:30 P. M. from ten to fourteen inches.

Between three and four o'clock the defendant went with one Matteson to deliver a load of coal, and while with Matteson asked where he could sell a dead man; and on their return said to Matteson, "When we are coming back I will

show you where the stiff is; he is in a car." Defendant also
told this witness that if he sold this dead man he had another
one in sight, and that he would divide with witness. On
their return from delivering the coal defendant took Matte-
son to the box-car on I Street. The car was closed and de-
fendant opened the door; the body of deceased was lying in
the west end, no hat on and still warm; defendant jumped
into the car, raised the head of deceased and said, "Isn't he
a big, nice, juicy son of a bitch?" The flap of the pants was
lying open. Defendant and witness then went to the cor-
oner's office and tried to sell a dead body. The defendant
said to Fenton, who was in the coroner's office, "I have got
one for you; how much is there in it? I have got to have some
money." The witness Fenton, who was also an undertaker,
went with defendant to the car for the body, and on ap-
proaching the car defendant jumped out of the wagon, opened
the car door, went to the body, grabbed hold of it and pulled
it to the door of the car and helped to place it in the wagon.
The sternum was caved in, the lower jaw broken, and the
body was beaten in a way to indicate that some blunt instru-
ment had been used in inflicting the wounds, for the skin was
not broken; the heels of the shoes worn by defendant showed
blood-stains and blood-stains were on his overalls; he declared
he had no acquaintance with deceased; when the coroner
asked him when he discovered the body he answered, "About
twelve o'clock." When the coroner said to him, "Now it is
after four o'clock. Why didn't you report this before?" he
answered, "Well, I don't know." Blood-spots and stains
were found in the car. The deceased must have met his
death in the car. Defendant tendered no explanation of
these circumstances. We think these circumstances were suffi-
cient to indicate the guilt of the defendant, and as the jury
found him guilty, they must have believed him guilty beyond
a reasonable doubt.

The shoes and overalls of the defendant, and the hat found
in the car after the body was removed, were all introduced in
evidence over defendant's objection. We think there was
sufficient identification of the shoes and overalls as belonging
to the defendant and the ones he wore between 11:55 A. M.
and 3:30 o'clock P. M. of the day of the killing, and each
article appeared to have human blood-stains on it. The hat

was not identified as the one deceased wore when he was seen with defendant going into the car, but there was nothing about the hat which would make it a link in the chain of evidence showing guilt, and could do the defendant no harm.

Dr. Stevenson, the medical expert who made the autopsy on the body of the deceased, testified that he found abrasion on face, slight abrasion of left ear, abrasion and contusion over left cheek, right ear badly contused and slightly lacerated, fracture of right lower jaw, contusion an inch in diameter over inner third of right collar-bone, contused wounds on other parts of collar-bone and one below the navel, a contused wound on the left groin, contused wound on the outer side of the left hip and other scattering contused wounds on the body, and a general bruised condition about the chest. "All the ribs on the right side were fractured except the upper two; the third, fourth, fifth, sixth, seventh, eighth, and tenth ribs on the left side were fractured. There was a contusion of the apex of the heart which was caused by this violent force, forcing the chest wall down on the heart. There was a multiple rupture of the liver, done by the same cause. There was a considerable quantity of blood in both pleural cavities and in the abdominal cavity. Both lungs were bruised, and this condition was caused by the chest wall being forced in on them. The top of the chest was literally crushed in. Those wounds were necessarily fatal." The witness was then asked, "What, in your opinion, was the character of the instrument by which those wounds were caused?" Defendant objected on the ground that "this is not a subject of expert testimony." The objection was overruled, defendant excepted, and the witness answered, "It was made from some blunt instrument; I should say rather, narrow, without any cutting edges—I mean sharp, cutting edges; there was no break in the skin; it was a bruised condition; so it must have unquestionably been produced by some blunt instrument of some kind." Defendant moved to strike out the witness's answer on the same ground, which the court denied, and he excepted. The witness then continued: "The ribs were broken clear off and forced in, tearing the pleura as they went by. The liver was ruptured in about five places."

On cross-examination the witness testified: "Death would

have come very soon after having received such injuries. I do not think he could have lived three quarters of an hour, and it would have been impossible for deceased to have walked after receiving those injuries.'' In support of defendant's contention that the question as to the character of the instrument by which the wounds were caused is not expert testimony and is harmful to the defendant he cites the Durrant case (116 Cal., pp. 215-218, [48 Pac. 84, 85].) In that case a hypothetical question was put to the expert physician, something like this: ''If you wanted to keep the head—the face and neck—in an upright position, not turned to one side or the other, of a dead body still warm with life, what would you do to keep it in that position?'' The objection to the question was, that it was not a hypothetical question involving any elements in the case. The ruling and reasoning for same are unnecessary to quote here. The witness answered: ''I would place it first in the position in which I wanted it, and, if it did not remain there, I would prop it up by supports in the desired position.'' Having disposed of the question raised in that case by Mr. Deuprey's objection, the court passed to the consideration of the proposition that the hypothetical question and answer were not the subject of expert testimony—a question, says the court, that was not presented to the trial judge. The court further said: ''A juryman would be absolutely deficient in common sense and common knowledge who did not know that the way to keep an inanimate object in a given position would be to support it by props and stays in that position. . . . There was here no question of professional, scientific, or technical skill or knowledge. But the question and answer were absolutely without injury.''

And so it is here. The witness had described the wounds, and, surely from his detailed statement of their description and condition as he found them, it would show to the very dullest mind that they were inflicted with something other than a sharp instrument, but that in making them some blunt instrument must have been used, and the jury would be forced to such conclusion without the statement of the physician that the instrument was a blunt one. The shoes introduced in evidence were shown to be the shoes worn by defendant, and the jury had a right to infer from the descrip-

tion of the wounds themselves that they were made with the heels of those very shoes.

A witness called as an expert should not be permitted to give his opinion and conclusions upon any matter not clearly of the nature of expert evidence. And when such testimony is admitted and is of such a nature as to present to the jury a conclusion other than that which the jury might properly and reasonably reach from the other testimony in the case, then such testimony is harmful and it will be error to admit it. For the reasons here stated, there was no error in admitting this evidence.

Certain instructions were given by the court of which the defendant complains. The case was one of circumstantial evidence, and the court had fully instructed the jury as to the nature, force, and general rules of application of circumstantial evidence, and then said further: ''If, under the foregoing rules, the testimony in this case is sufficient to convince you, as reasonable men, beyond a reasonable doubt, that the defendant did commit the act charged, *although the act may be surrounded in a degree by a doubt,* then I charge you that it is your duty to convict.'' This very instruction was given in *People* v. *Anthony,* 56 Cal. 397, and approved. But we think the trial judge might very well have omitted the words italicized, as they seem to be meaningless when all the rules and definitions of circumstantial evidence are given, and in view of the fact that the jury were repeatedly admonished that they must be satisfied from the evidence and beyond a reasonable doubt of the defendant's guilt, or they must acquit him.

The defendant claims the court erred in giving the following instruction: ''The jury are instructed that each and every fact and circumstance relied upon by the prosecution to establish the guilt of the defendant, must be proved by the evidence, beyond a reasonable doubt, and if the jury are not entirely satisfied beyond all reasonable doubt, that such fact and circumstance has been proven, it is your duty to find a verdict of not guilty.'' The instruction seems as favorable to the defendant as he could ask, and, taken with all the other instructions in the case, and especially with the defendant's instruction No. 6, as modified by the court, he has no reason to complain. The instruction No. 6 is as follows, to wit: ''You are instructed that when independent facts and

circumstances are relied upon to identify the accused as the person who committed the crime charged, each material independent fact or circumstance necessary to complete such chain or series of independent facts tending to establish his guilt, should be established to the same degree of certainty as the main fact which these independent circumstances, taken together, tend to establish. That is to say, each essential, independent fact in the chain or series of facts relied upon to establish the main fact, must be established to a moral certainty, beyond a reasonable doubt, and to your entire satisfaction, or you must acquit the defendant.''

The refusal of the court to give defendant's instruction No. 15 and part of No. 2 is claimed as error, but all the matter contained in these two instructions is found in other instructions which were given, and the defendant had the full benefit of all they contained, and no error was made.

For the reasons herein stated, the judgment and order are affirmed.

McLaughlin, J., and Chipman, P. J., concurred.