[No. 17240.  Department Two.  July 8, 1922.]

# THE STATE OF WASHINGTON, *Respondent*, v. JAMES E. MAHONEY, *Appellant*.[1]

CRIMINAL LAW (36)—VENUE — CHANGE — LOCAL PREJUDICE — REVIEW.  It is not an abuse of discretion to refuse a change of venue in a murder case which was given much publicity throughout the state, in view of the fact that the county contained 400,000 inhabitants in which there would be found as many inclined to view the case fairly as in any other county.

SAME (191)—TRIAL—CONTINUANCE—DISCRETION OF COURT.  Refusal of an application for a continuance in a murder trial to enable counsel to qualify themselves in cross-examining expert witnesses, and to raise money for the defense, is not error where counsel were very competent and there is no showing that defendant failed to secure all the testimony procurable.

SAME (195-1) — DEFENSES — INSANITY — INQUIRY — STATUTES.  Rem. Comp. Stat., § 6930, dealing with the liberty of an individual through insanity charges has no application to a plea of insanity as a defense to a charge of murder, under which the accused was already in custody.

JURY (48)—COMPETENCY OF JURORS—CHALLENGE FOR CAUSE—INFLUENCE OF OPINION ON VERDICT.  In a prosecution for murder, jurors are not disqualified by reason of having heard of the case and having an impression concerning it, where they had neither talked to any of the witnesses or formed any definite opinion as to the merits.

SAME (52)—COMPETENCY—PREJUDICE—INFLICTION OF DEATH PENALTY.  In a prosecution for first degree murder, it is the duty of the state to secure jurors who are not opposed to the infliction of the death penalty.

HOMICIDE (52)—EVIDENCE—ADMISSIBILITY.  In a prosecution for murder of accused's wife, in which he claims that the wife was in St. Paul with him, a letter purporting to be from a woman in St. Paul to an acquaintance of the accused and whose name accused appears to have been using, bearing upon accused's assertions as to the presence of the wife in that city, is admissible in evidence, it appearing that the address of the woman was found upon papers in the pocket of the accused.

CRIMINAL LAW (168)—EVIDENCE—CONFESSIONS—DURESS.  A confession by accused, made to police officers, without threats or inducements, is admissible.

[1]Reported in 208 Pac. 37.

JURY (62)—COMPETENCY—CHALLENGE FOR CAUSE—DELAY IN EX-CUSING JURORS. Where a challenge to jurors was at first denied, and later granted while accused had three peremptory challenges, defendant was not prejudiced by the delay.

HOMICIDE (121)—TRIAL—INSTRUCTIONS AS TO LESSER OFFENSE. Where, in a prosecution for murder in the first degree, in order to find the defendant guilty at all, the jury must accept evidence of premeditation, it is not error to instruct that, if guilty at all, the offense would be murder in the first degree.

CRIMINAL LAW (215)—TRIAL—MISCONDUCT OF JUDGE—COMMENT ON EVIDENCE. It is not prejudicial error that during the impaneling of a jury in a murder case depending largely on circumstantial evidence, the court stated "Lips may lie, but circumstances never lied in the world," where only a few jurors had been chosen and the panel from which the balance were selected had not been brought into the room.

Appeal from a judgment of the superior court for King county, Ronald, J., entered October 14, 1921, upon a trial and conviction of murder. Affirmed.

*Lee Johnston* and *L. B. Schwellenbach,* for appellant.

*Malcolm Douglas* and *T. H. Patterson* (*R. L. Bartling,* of counsel), for respondent.

HOVEY, J.—Appellant was found guilty of murder in the first degree, the verdict fixing the penalty of death. A consideration of the assignments presented upon the appeal requires a statement of the facts which the evidence tended to establish.

Appellant was released from the penitentiary at Walla Walla in the month of January, 1921, and came to the city of Seattle, where he was introduced by his sister to Kate Mooers, who was of the age of sixty-seven or sixty-eight years and possessed of considerable property, appellant being of the age of about thirty-eight years. The parties intermarried on the 10th of February, 1921, and lived in an apartment house belonging to the wife. Early in the month of April they arranged for a trip to St. Paul, intending

to be gone for several months, and later fixed upon April 17 as the date for their departure.

On the 13th or 14th of April, appellant visited the district fronting upon the east side of Lake Union and discussed with the owner of a boathouse the renting of a portion of it. This property is known as 1415 East Northlake avenue. Appellant at that time claimed that he had a partner and wanted to get away from the heat of the city, inquired as to the depth of the lake and whether large vessels came through. On April 14, appellant visited the same district and rented a boat for one week, giving an assumed name, and at that time gave his residence as 1415 East Northlake avenue. The owner found the boat in the neighborhood a week later. At this time appellant stated that he was in the fertilizer business.

On April 16, appellant purchased in a hardware store a short distance from his residence thirty feet of rope and five pounds of lime and had it charged to his wife.

On the afternoon of April 15, Mrs. Mahoney made two visits to a safe deposit box, withdrew $1,600 in cash and purchased traveler's checks drawn on the American Express Company to the amount of $460, and the checks which the appellant afterwards used are certain of these checks. The checks are each for the sum of $20, and each bears the admitted signature of Mrs. J. E. Mahoney at the bottom. Those in evidence each have this same name a second time, but it is not the signature of Mrs. Mahoney. On that evening the Mahoney couple were at the New Baker Hotel in the company of several acquaintances.

On Saturday, April 16, the appellant appeared at the office of E. J. Brandt, an attorney and notary public in Seattle, in company with a woman, who then executed a general power of attorney in his favor under

the name of Kate Mahoney, but who was in fact not that person. This attorney was personally acquainted with Kate Mooers, but did not know that she had married and did not know that the instrument then executed was supposed to be her act.

The couple were seen together in their apartment the early part of the evening of April 16, but according to the evidence for the state, Mrs. Mahoney was never seen alive after about nine p. m. of that day. In the early part of that evening a phone call was received by the Seattle Transfer Company, directing them to remove a trunk that evening from 409 Denny Way, where the Mahoneys resided. A driver of the transfer company called about ten p. m. and found the appellant on the sidewalk, and was directed to remove a trunk tied with a rope which was then standing in the hallway. The driver estimated the trunk to weigh one hundred and seventy-five pounds, but it could have been twenty pounds heavier. Appellant went with the driver to the neighborhood of the boathouse, informing him that he rented the one at 1415 East Northlake avenue, but said that the driver could not very well get to the place, and, at appellant's direction, the trunk was placed in a rowboat, in which appellant stated he would convey the trunk to the boathouse.

On the morning of April 18, appellant ordered some clothes at a tailor shop and made a payment with two of the traveler's checks above referred to. On the afternoon of that date he went to the city of Everett and there took the Great Northern train for St. Paul. On the train appellant mailed cards to his wife's nieces telling of the fine trip she was having. Upon his arrival there he registered as J. E. Mahoney and wife. While there he dictated to the hotel stenographer two letters, one of which was an order upon Mrs. Mahoney's attorney in Seattle to turn over to J. E. Mahoney

all abstracts, etc., then in his possession, and the other was an order upon William D. Perkins & Company to permit J. E. Mahoney to use her safety deposit box. Both letters purport to be signed by Kate Mahoney.

On April 25, appellant was in Willmar, Minnesota, in company with a man whom he had known for a long time and who had visited at the apartment in Seattle on the night of April 15. Mahoney then produced four of the traveler's checks and, upon the identification of his friend, purchased a ticket for Seattle. On returning there he placed his power of attorney of record on April 27th and secured access to his wife's safe deposit box. He endeavored to dispose of a mortgage loan of his wife, and secured her automobile from the garage.

Appellant, at numerous times, made statements to the effect that his wife had gone to St. Paul with him, and after remaining there a few days, had gone on to Cuba.

The testimony of handwriting experts showed that all of the signatures alleged to be those of Mrs. Mahoney which were made after April 15 were not in fact her signatures.

Appellant was arrested in May, charged with forgery. At the time of arrest, appellant had on his person jewelry of considerable value which had belonged to his wife and which he had previously claimed to his wife's nieces Mrs. Mahoney had with her in Cuba. From that time until August 9, the authorities continuously sought to discover the trunk, which was supposed to be in Lake Union. On the latter date the trunk was discovered, containing the body of Kate Mahoney. The face and various other portions were badly disfigured from the application of lime. The stomach contained twenty grains of morphine, and there was a hole in the side of the skull, caused by some blunt instrument, which was testified to have

been the cause of death. Several pieces of Mrs. Mahoney's clothing and other articles belonging to her were found in the trunk.

On August 10, an information was filed charging appellant with murder in the first degree, and he was arraigned on August 11, at which time August 16 was named as the date for his pleading. On the latter date, and before pleading, an application in appellant's behalf was presented to the court seeking to have him declared insane, and appellant then demanded a jury to pass upon that question. Appellant was denied a jury, and the court appointed a commission to investigate his sanity. This commission found him to be sane, and the court stayed the time for pleading until an application could be made to this court for a writ of prohibition pending the appeal from the order in the insanity proceeding. The latter writ was denied, and on August 23, a plea of not guilty was entered and the case set for trial for September 20. On September 6, a motion was made for a change of venue, and this motion was renewed several times, and as often denied. On September 13, appellant moved to postpone the trial to October 10, and this motion was later denied. The trial of the cause was commenced on September 20, and a verdict rendered on October 1.

The first three assignments of error deal with the refusal to grant a change of venue. The circumstances of the case and the considerable delay between the first discovery of evidence pointing to murder and the time when the state felt itself able to prove the corpus delicti furnished a great deal of copy for sensational news articles. The body was exhibited to thousands of people shortly after it was discovered, and the case naturally attracted a good deal of public interest. Many affidavits were produced on both sides going to the question of a possibility of appellant's

securing a fair trial. While there was general abhorrence at the crime itself, it does not appear that the community had become committed to the fact of appellant's guilt, and the examination of jurors which preceded the trial does not show an unusual number who were biased. It is true that two venires were exhausted before a jury was secured, but a very large number were excused because they had conscientious scruples against capital punishment and circumstantial evidence. We believe it is also fair to assume from the record that in a county of the size of King, with nearly 400,000 people, there would be found as many inclined to view the case fairly as in the other counties of the state, owing to the wide distribution of the newspapers of the city of Seattle and the publication of similar articles in the entire press of the state.

The motion is addressed to the discretion of the trial court and will not be disturbed unless it plainly appears such discretion was abused. *State v. Straub,* 16 Wash. 111, 47 Pac. 227. We are satisfied that the trial court did not abuse its discretion in denying the several motions for change of venue.

The fourth assignment is claimed error of the trial court in refusing to postpone the date of the trial. The chief grounds of this application are the need of appellant's counsel to qualify themselves in cross-examining the expert witnesses that might be called, and to raise money wherewith to present their defense. Throughout this trial appellant has been represented by able counsel whom we can safely say have left nothing undone which could be done in his behalf, and the fears of his counsel do not appear to have been realized, since the trial has taken place and it is not shown that he failed to secure all testimony in his favor which was procurable.

The fifth to the tenth assignments, inclusive, relate to the insanity proceedings. These proceedings were instituted by the mother of appellant and in his behalf and were handled by the same counsel who represented him in the criminal action. Our statute (§§ 6930 *et seq.,* Rem. Compiled Stat.) is invoked as a rule of procedure. In our opinion, it has no application to a case of this kind. The statute deals with the depriving of an individual of his liberty by seeking to have him declared insane, and provides that in that case he may demand a jury, and if found insane he may be committed to an insane asylum. This appellant was already in custody on a valid criminal charge and any inquiry into his sanity was merely incident to the criminal case, and the trial court rightly decided to follow the customary practice. *State v. Peterson,* 90 Wash. 479, 156 Pac. 542.

The twelfth and thirteenth assignments relate to the refusal to sustain challenges to the jurors Miller and Westin. These jurors both admitted having heard something of the case and of having what they termed an impression concerning it, but neither had talked to any of the witnesses or formed any definite opinion as to its merits and both were quite clear that they were in an entirely unprejudiced frame of mind. A careful consideration of their entire testimony satisfies us that they were impartial jurors.

The fourteenth and fifteenth assignments raise objections made by appellant to questions asked jurors by the state as to their prejudice against the infliction of the death penalty. We think it was the duty of the state to secure for jurors those who were not opposed to the infliction of the death penalty in a proper case, in view of our statute permitting this form of punishment.

The sixteenth and seventeenth assignments relate to the introduction in evidence of a letter written by a woman in St. Paul to O. P. Callahan. From the letter it is possible to assume that the writer had had improper relations with the addressee during the time he was in St. Paul, and it was introduced by the state as bearing upon the assertions of appellant as to the presence of his wife in that city. Mr. Callahan was in fact the head of a fertilizer company in Seattle, had not been in St. Paul, and knew nothing of this woman, but did know the Mahoneys, and Mrs. Mahoney owned stock in his company, and appellant had shortly before arranged for employment in this company, and the telephone number and address of this woman were found upon one of the papers in the pocket of the appellant, together with a message to her, and appellant at times had possession of the business cards of this company. After permitting the letter to be admitted, the trial court changed its ruling and ordered the letter withdrawn as evidence and cautioned the jury against considering it in any manner. We think it is unnecessary to consider the effect of the court's withdrawal, as we deem the letter to have been admissible in view of the other testimony in the case.

The eighteenth assignment concerns an alleged confession made by appellant to the chief of detectives, Charles E. Tennant. The circumstances under which the confession was made were shown in detail to the jury, and according to the testimony of the officers, the only coercion consisted in ordering the appellant from his cell for the purposes of interview. There is no testimony that any threats or inducements were made to the appellant concerning his statements.

The twenty-second assignment relates to the jurors McIntyre and Chase. These were challenged by appel-

lant for cause and the challenge was at first denied, but subsequently the court changed its ruling and excused them. At this time the appellant had three peremptory challenges left. We are unable to see how the. appellant was prejudiced by the mere delay in excusing these jurors.

The twentieth and twenty-first assignments relate to the instructions. The argument made against these is that they are convicting instructions. In our judgment they are fair and intended to secure the appellant against a conviction except under the circumstances prescribed by law.

The court instructed the jury that, if they found the defendant guilty, the offense would be murder in the first degree. Appellant contends, by its nineteenth assignment, that this was error and the jury should have been given an instruction covering the offense of murder in the second degree. This question is not free from difficulty. In *State v. Kruger*, 60 Wash. 542, 111 Pac. 769, we held it to be improper to instruct on an offense of a lesser degree where it was not included by the facts of the particular case, following *State v. Robinson*, 12 Wash. 349, 41 Pac. 51, 902, and *State v. McPhail*, 39 Wash. 199, 81 Pac. 683, and this is the law as defined in 11 Ency. of Pleading and Practice 211. See, also, *Fertig v. State*, 100 Wis. 301, 75 N. W. 960; *Henry v. State*, 30 S. W. (Tex. Cr.) 802. The *Kruger* case was followed in *State v. Gottstein*, 111 Wash. 600, 191 Pac. 766, and we deem the latter case especially in point here. We have come to the conclusion that, in order to find the defendant guilty at all, the jury must accept evidence which in itself shows premeditation, which is the element necessary to raise the offense from the second to first degree murder.

The most serious question presented by this appeal is under the eleventh assignment. During the impan-

eling of the jury, a juror had expressed sentiments against conviction upon circumstantial evidence, whereupon the trial court, before excusing him, said: "Lips may lie, but circumstances never lied in the world." Appellant contends that, as the state's case was largely based upon circumstantial evidence, this was highly prejudicial. The statement was not in accord with the impartiality which should be maintained by the trial judge, but the trial judge was probably considerably tried by the delay experienced in getting a jury. If it had been made after the jury was impaneled and he had made it with reference to evidence then before the jury it would probably constitute reversible error. We consider that, at the time it was made, it was in the nature of a statement upon an abstract proposition. Only a few jurors had been chosen and the panel from which the balance were selected had not yet been brought into the court room, and we consider that it is not error which will justify a reversal of the case. A similar situation arose in *People v. Olsen,* 1 Cal. App. 17, 81 Pac. 676, and while it was held that the remarks were highly improper and could well have been left unsaid, they did not constitute reversible error.

The last assignment relates to the refusal of the court to grant a new trial. No argument is made under this assignment and no new questions are raised, except the third point which asserts that the information does not charge a crime, and the second point that it does not charge the crime of murder in any of its degrees, and, in our opinion, these contentions are clearly untenable.

It is our conclusion that the defendant had a fair trial, and considering its length and the number of witnesses, the debatable questions are few. The evidence, while largely circumstantial, was so clear and

overwhelming as to leave no question of the justness of the verdict rendered.

The judgment is affirmed.

PARKER, C. J., MACKINTOSH, MAIN, and HOLCOMB, JJ., concur.