[S. F. No. 5558. In Bank.—December 14, 1910.]

## NAOMI E. DAVIS, Executrix of the Estate of Henry S. Davis, Deceased, Respondent, v. CONNECTICUT FIRE INSURANCE COMPANY, Appellant.

FIRE INSURANCE—FALLEN BUILDING CLAUSE—INCREASE OF RISK—INSTRUCTIONS.—Under a provision in a policy of fire insurance that if the "building or any part thereof fall, except as the result of fire, all insurance by this policy on such building or its contents shall immediately cease," it is not necessary, in order to avoid the insurance, that the fall had the effect of increasing the fire risk, and an instruction to the contrary is erroneous.

ID.—DISTINCTIVE CHARACTER OF BUILDING—VAGUE INSTRUCTION.—In an action upon the policy, in which a breach of such clause is relied upon as a defense, an instruction that in order to sustain the defense the jury must find that such a portion of the building had fallen as would destroy its distinctive character as a building, is too vague to be a safe guide for the jury. The giving of such an instruction will be deemed without prejudice to the insurer, when the evidence conclusively shows that the entire upper story of the building was shaken down by an earthquake, so that the roof fell down upon the second floor.

ID.—FIRE STARTING BEFORE FALL OF BUILDING—EVIDENCE—EARTHQUAKE —BREAKING OF ELECTRIC WIRES.—Upon a review of the evidence, it is held sufficient to support the finding of the jury that the fire that destroyed the insured property started before any part of the building in which it was contained had fallen as the result of an earthquake, and that it was not improbable that the first effect of the earthquake was to break some wire in the building charged with electricity, thereby instantly starting a fierce fire, and that the falling of a part of the building did not occur until the last earthquake vibration and after the fire had begun.

ID.—INSURER LIABLE FOR FIRE STARTED BEFORE FALL OF BUILDING—EXTENT OF LIABILITY.—The proper construction of such fallen-building clause is that it does not apply to the case of a building, or part thereof, falling from a cause other than fire after it has begun to burn, if the insurance is on the building, and perhaps even if it is only on goods therein, and where goods only are involved, it does not apply where the goods have begun to burn before, and are burning at the time, the fall occurs. Under such circumstances, the

liability of the insurer is not limited only for so much of the goods as were consumed or injured by fire before the fall occurred.

ID.—EVIDENCE—CAUSE OF FALL—OPINION OF WITNESS.—A question asked a witness, as to whether the falling of the building was the result of fire called for a mere conclusion or opinion as to a fact which was not the subject of expert testimony, and an objection thereto was properly sustained.

ID.—REJECTION OF EVIDENCE WITHOHT PREJUDICE.—Where the entire evidence showed conclusively that an earthquake caused the fall, and no attempt was made to show the contrary, the refusal to allow such question was without prejudice to the insurer.

APPEAL from an order of the Superior Court of Sonoma County refusing a new trial. Thos. C. Denny, Judge.

The facts are stated in the opinion of the court.

A. B. Ware, and T. C. Van Ness, for Appellant.

Thomas J. Geary, for Respondent.

SHAW, J.—This is an appeal from an order denying the defendant's motion for a new trial.

The plaintiff sued to recover upon an insurance policy issued by the defendant to Henry S. Davis, in his lifetime, covering a stock of drugs belonging to Davis, contained in a store-room on the ground floor of a two-story brick building situated in the city of Santa Rosa. The fire which occasioned the loss took place on the morning of April 18, 1906, immediately after the great earthquake of that day.

The policy issued by the defendant contained the following clause: "If a building or any part thereof fall, except as the result of fire, all insurance by this policy on such building or its contents shall immediately cease."

Upon the trial the defendant stated that its sole defense was based upon the aforesaid clause, and that unless that defense was sustained by the evidence the judgment should be given for the plaintiff.

In addition to the general verdict for the plaintiff, the jury returned answers to a number of interrogatories submitted to them. Some of these were in respect to the question whether the fall of a part of the building was before or after the fire started. The answers of the jury stated in substance that no

part of the building fell before the insured goods were attacked by fire. The several answers clearly imply, although they do not expressly say it, that a material part of the building fell and that the falling thereof was caused by the earthquake and not by the fire.

The appellant complains of several instructions relating to the subject of the fall of a part of a building and how much of it must have fallen in order to bring about a cessation of the insurance under the clause above quoted. One of them stated that the jury must find that such a portion had fallen as would destroy its distinctive character as a building; another that the fall must have had the effect of increasing the fire risk. We have considered the latter instruction in our decision in *Fountain* v. *Connecticut Fire Ins. Co., ante,* p. 760, [112 Pac. 546], and held it to be erroneous. The other instruction is too vague to be a safe guide for the jury. Reasonable men might reasonably differ upon the question of its meaning. To destroy a building's distinctive character, as such, might merely refer to a change in its appearance, or to a fall that would require a change of its use, or its practical destruction as a building. But in view of the clear, conclusive, and uncontradicted evidence that the entire upper story was shaken down by the earthquake alone, so that the roof fell down upon the second floor, we cannot believe that the instructions on this branch of the subject could have prejudiced the defendant in the least. The proof showed conclusively that the earthquake alone caused the fall of a sufficient part of the building to destroy its distinctive character as a building and to increase the risk from fire. There was, in fact, no real controversy at the trial in regard to this point. The interrogatories and the answers thereto show that this fact was conceded and, indeed, the jury could not have found otherwise upon the evidence, for there was absolutely none to the contrary. The whole defense turned upon the question whether or not the fire attacked the goods before a part of the building had fallen. The jury answered that it did. It is claimed that this finding is not supported by sufficient evidence.

The strongest evidence in favor of the proposition that the fire attacked the goods before the walls fell is the testimony of the witnesses Duncan, Bailey, and Faught. Bailey testified that

he was running a livery stable, situated near the Davis Build-
ing, and that, from his stable, not more than three or four
minutes after the earthquake, he saw fire in the rear of the
Davis Building.  Faught testified that he was a fireman and
slept in the engine-house which was situated on a lot fronting
on Fifth Street and running back toward Fourth Street, the
rear thereof being about fifty feet from the rear of the Davis
store.  He said: "It did not take very long that morning to
get out of the engine-house.  I saw the rear of the buildings
where the Davis drug store was about three or four minutes
after I got out of the engine-house.  I saw the fire started.  I
saw a volume of smoke come up right behind the Davis drug
store.  I saw quite a volume; enough to indicate to me the
existence of a good fire there."  Duncan was a fireman and
lived in a cottage in the rear of the Davis drug store.  At the
time of the earthquake he was in the engine-house, about fifty
feet from his cottage.  He got out of the engine-house about
five minutes after the earthquake and went to the back door
of his cottage from which he saw fire in the back end of the
Davis Building.  The back end of it was then burning.  The
inside of the building was then on fire and the smoke and
flames were coming out of the windows and through the roof.
Muther, chief of the fire department, a witness for plaintiff,
testified that ten minutes after the shock he climbed to the
top of the Davis Building and found that the roof had fallen
and rested upon the first story, that he saw at once that there
was a fire coming fast "eating into" the building, and little
blue blazes climbed up all around the brick, and that the fire
was of an absolutely unnatural color, a kind of blue color all
through the bricks.  It was admitted that the building was
lighted with electric lights, and, in effect, that the wires were
at that time charged with electricity.

It is not improbable that the first effect of the strain caused
by the earthquake was to break some wire charged with elec-
tricity, thereby instantaneously starting a fierce fire, and that
the falling of the wall did not occur until the last severe
vibration and after the fire had begun.  The earthquake con-
tinued for forty-five seconds.  Even this brief period was long
enough for the two events to occur consecutively, with an in-
terval between them of more than half a minute.  The evi-
dence does not show the particular place in the building where

the inflammable drugs were kept. The testimony of Muther that the flames were of an unnatural blue color inside the building ten minutes after the earthquake indicated that some inflammable substance different from the wooden part of the building was then burning. It is common knowledge that the breaking of a charged electric wire will instantly cause a very hot flame and that if combustible materials are near by such a fire will spread with great rapidity. Under all these circumstances we cannot say that the finding of the jury on this point was not sustained by the evidence.

The appellant contends that it is immaterial whether the building was on fire or not at the time the wall fell, provided fire did not cause the fall. The court charged the jury that if it found that a material part of the building fell from a cause other than fire, before the *insured goods were attacked by fire,* the plaintiff could not recover. The case appears to have been tried upon the theory that this was the extent of the burden of proof resting upon the defendant. The jury, as we have said, obviously found that the goods were on fire before any part of the building fell. It appears from the evidence, however, that at the time the walls were thrown down by the earthquake, only a small part of the goods could have been consumed or injured by the fire. The claim is that if there was a falling of the wall, not caused by fire, the above clause of the policy thereupon immediately became operative, the insurance immediately ceased, and that, although the fire began before the wall fell, the defendant is liable only for so much of the goods as were consumed or injured by fire before the wall fell and for none that were consumed or injured afterward.

The case of *Keisel* v. *Insurance Co.,* 88 Fed. 243, [31 C. C. A. 515], is cited in support of this proposition. That was a loss of insured goods in a building. Counsel quotes from the opinion in that case the following: "If it (the building) was on fire, and it would have fallen by the force of the wind if there had been no fire, then its fall could not be said to have been the result of the fire, and the defendant was not liable. . . . The cause of the fall was the test of liability." Wrenched from its context, this passage may seem to support appellant's claim. But a reading of the entire decision shows that the precise question here in issue—the liability where,

after a fire has attacked insured goods but before it has done much damage, a material part of the building containing them falls from a cause other than fire—was not under consideration in that case, and that, as appears by stipulation in that case, the only questions for decision were whether or not the fire began before the building fell, and if it did whether the fall was caused by the wind or the fire. The discussion shows that the court, in effect, held that the insurer was liable if the wind blew the wall down, after the fire started but before it reached the insured goods, and, by implication, at least, that it would not have been liable if the wall had been blown down before the goods were attacked by fire. The trial court in its instructions to the jury had said: "If this building, or any substantial part thereof, fell before the fire, or *before any portion of the merchandise insured* was injured by fire, and it so fell, not as the result of the fire, but as the result of something else, your verdict should be for the defendant." And further: "If that building fell, even after the fire had originated,—if the fall was not caused by the fire, —and if at the time it fell the goods had not caught fire, and had not been damaged by fire, the defendant would not be liable. . . . If, on the other hand, those goods had been damaged by fire, or had caught fire prior to the falling of the building, you will find for the plaintiff." This instruction was approved. The judgment in that case was for the company, and the plaintiff appealed, and while the question whether or not the charge was too favorable to the plaintiff was not involved, the instruction shows, as also do the comments thereon, that the court did not mean to decide that it was immaterial whether the building was or was not burning at the time the wall fell from the wind and that it did not hold that if a building fall, other than by fire, while goods therein are burning, the loss will be divided by that event, and the company held only for the goods consumed or injured before the fall.

Upon the question last stated we think the most reasonable interpretation of the fallen-building clause is that it does not apply to the case of a building, or part thereof, falling after it has begun to burn, if the insurance is on the building, and perhaps even if it is only on goods therein, and that where goods only are involved, it does not apply where the goods

have begun to burn before, and are burning at the time, the fall occurs. When the fire begins to burn the property insured, the thing insured against has happened, the liability has begun, some loss has become inevitable. It is true that it might happen that a fall occurring during a fire would prevent it from being put out, and thus cause greater loss than would otherwise have been suffered, and the insurer might wish to contract for exemption in such a contingency. But in such a case it would be practically impossible to make an intelligent division, separating the loss occurring before the fall from that occurring afterward. No person owning goods would be willing to make such a contract and assume the burden of such a division, if he understood its effect. If it was the intention to provide for the case of the falling of a building after a fire had attacked the goods and to exempt the insurer from liability for the goods burned after the fall took place, while holding him for that which occurred before, surely more explicit language would have been used. Other events which the policy declares shall avoid it, such as a change of interest, an assignment of the policy, or the execution of a mortgage thereon, might occur after the goods began to burn. Would it be contended, in such cases, that an account must be taken and the insurer held only for the goods burned and the injury caused before the event? The division would in most cases necessarily be a mere guess. It is obvious that the parties did not contemplate the application of the fallen-building clause in this manner. The better rule is to hold that the liability of the insurer, so far as this clause is concerned, is fixed by the conditions existing at the time the fire and consequent loss begins, and is not affected or changed by the fall of the building, or a part thereof, subsequently but before the destruction is complete.

The witness Muther was asked the question: "Was the falling of the Davis Building the result of fire?" An objection to the question was properly sustained. It called for a mere conclusion or opinion as to a fact which was not the subject of expert testimony. If the testimony he had previously given as to the facts was true, the conclusion that the fall was not the result of fire necessarily followed. Moreover, as we have stated before, the entire evidence showed conclusively that the earthquake caused the fall, and there was not

even an attempt to show the contrary. The refusal to allow the question was therefore not injurious to the defendant. This also applies to the refusal to allow the witness Wilson to answer a general question as to the condition of all the buildings on Fourth Street after the earthquake. Furthermore, the evidence was properly confined to the Davis building, and, in addition to that, the witness was afterwards allowed to say that he could not tell one building from another, because they were all down, and thereby he did, in effect, answer the question.

We find no prejudicial error in the record.

The order is affirmed.

Angellotti, J., Sloss, J., Lorigan, J., and Henshaw, J., concurred.

MELVIN, J., dissenting.—I dissent. I think the conclusion by the jury that the fire attacked the goods before a part of the building had fallen is not supported by sufficient evidence. To hold that the testimony of Duncan, Bailey, and Faught sustains such a finding, is to ignore the rule that the plaintiff's case must be sustained by a preponderance of evidence. All of these men saw the fire some minutes after a material portion of the building had fallen. Their stories comport as well with the theory that combustion followed the greatest and most destructive movement of the earthquake as with the deduction that the first vibration broke the electric light wire and so caused the fire. Indeed, according to the doctrine of probabilities it is very likely that the same force which destroyed the upper walls of the building broke the wire and liberated its current. Whether a mass of loosened brick can leave a wall sooner than a vagrant electric current can set fire to a stock of goods is a question too difficult for satisfactory solution even by all the combined wisdom of the members of a trial jury, and unless we can ignore the necessity of plaintiff's establishing his case by preponderance of evidence, I cannot see how the proof sustained the jury's finding. I think it clear that the destruction of a portion of the building having been shown, the burden was on the plaintiff to prove the occurrence of the fire in some manner other than from any of the accepted risks. (Beach on Insurance, sec.

1329; *Pelican Insurance Co.* v. *Troy Co-operative Association*, 77 Tex. 225, [13 S. W. 980]; *Phœnix Ins. Co.* v. *Boren*, 83 Tex. 97, [18 S. W. 484].) In California this rule with reference to the burden of proof has, I think, long been established, although at least one learned judge has cited one of our leading cases as announcing the opposite doctrine. In *Western Assurance Co.* v. *Mohlman Co.*, 83 Fed. 813, [28 C. C. A. 157], the court refers to *Blasingame* v. *Home Ins. Co.*, 75 Cal. 635, [17 Pac. 925], as authority for the rule that the defendant must by a preponderance of evidence establish the performance on plaintiff's part of prohibited acts or show in like manner that the loss occurred from an accepted risk. An examination of that case, however, shows that a rule of pleading and not of evidence was announced. Broadly speaking, the court in the Blasingame case held that in an action on a policy of insurance a condition precedent may be generally pleaded under the provisions of section 457 of the Code of Civil Procedure, and that the complaint need not contain averments intended for the purpose of meeting or cutting off a defense. Yet in that case the learned commissioner wrote: "One seeking to recover on an insurance policy must aver the loss and show that it occurred by reason of a peril insured against." This doctrine was asserted with even greater emphasis in the case of *Rankin* v. *Amazon Ins. Co.*, 89 Cal. 203, [23 Am. St. Rep. 460, 26 Pac. 872], in which the policy under consideration provided that the plaintiff should keep a watchman on the premises day and night when the mill was not in operation, this court holding that, after the defendant had shown that the mill was idle, the burden of proving compliance with the warranty rested upon plaintiffs. So, in this case, it seems to me, the fall of a material part of the building being shown, it is for the plaintiff to prove by a preponderance of the evidence that the fire was burning his property while the building was intact. This, I think, he utterly failed to do. I am aware that the opposite rule is adopted in some jurisdictions and the burden of proof held to be on the defendant (see *Trans-Atlantic Fire Ins. Co.* v. *Bamberger*, (Ky.) 11 S. W. 595; *Western Assurance Co.* v. *Mohlman Co.*, 83 Fed. 813, [28 C. C. A. 157], but I think the other, which I believe has been the California rule, is based upon sounder reasoning. The order should be reversed.