[Civ. No. 6254. First Appellate District, Division One.—December 31, 1928.]

ALVA BELL KROLL et al., Respondents, v. EMIL RASIN, Appellant.

Myrick & Deering & Scott for Appellant.

Hadsell, Sweet & Ingalls for Respondents.

KNIGHT, J.—Henry Bell, aged sixty-two years, and his wife, Alma Bell, aged fifty-four years, were run down and killed while walking across East Fourteenth Street, Oakland, and their children, all of whom but one had attained majority prior to the happening of the accident, joined in bringing two actions for damages on account of the death of each parent. The two cases were tried together before a jury, and a verdict of $7,500 was rendered in each case, but on motion for a new trial each verdict was reduced to $3,750, and from the judgments entered for those amounts the defendant has appealed.

The accident happened about 7 o'clock in the evening on East Fourteenth Street at its intersection with Thirty-eighth Avenue. Mr. and Mrs. Bell started from the north curb of East Fourteenth Street to walk southerly across the street in the regular pedestrian path, but soon after leaving the curb they were struck simultaneously by an automobile

traveling westerly along East Fourteenth Street. Mrs. Bell's body was hurled upon or near the street-car tracks in the middle of the street, and Bell's body was found some twenty-five or thirty feet distant westerly.

There are four different automobiles referred to in the evidence, and the testimony as to the manner in which the accident happened and as to which of two of the automobiles first struck Bell and his wife is in sharp conflict. Two witnesses testified that it was a Ford sedan, which the defendant Rasin admittedly was driving, that first struck the couple. The testimony of one of these witnesses was to the effect that as the sedan struck the couple a woman screamed, and he saw the woman's body roll over toward the car tracks, and that the man's body seemed to drop off the left fender of the Ford. The other witness testified that he also saw the Ford sedan strike them, and that although he did not pay so much attention to what became of the woman's body after the impact, he heard the scream and saw Bell's body fall off the fender or the bumper on the front of the Ford sedan. These two witnesses further testified that after the impact the Ford sedan pulled into the curb and stopped about seventy-five feet or more beyond the point of the collision. Two other witnesses testified that Bell and his wife were struck by a large touring car traveling at a high rate of speed, which hurled Mrs. Bell off to the left between the rails of the street-car track and carried Mr. Bell forward on the bumper for a short distance when he dropped to the pavement; that as Mrs. Bell lay between the car tracks another automobile apparently accompanying the first sped along and ran over her body; and that while Bell was trying to raise himself from the ground the defendant Rasin came along in his Ford sedan and ran over him.

The evidence further shows without dispute that following closely behind the Ford was another automobile, a Chandler car, which was being driven by one Harris, and that before Harris could stop his car he also ran over the body of Bell. Harris was joined as a party defendant to the actions, but at the opening of trial the actions as to him were dismissed.

Defendant Rasin testified in effect that he did not know that he had struck anyone. He admits, however, that his lights were lit at the time and that he could see clear across

the street both ways. He also testified that he did not hear any scream, and that the reason he pulled into the curb and stopped was that he felt his car "shimmying" and that when he alighted from his car he saw a man lying on the pavement some distance to the rear of his car, close to the curb. The evidence further shows that the front end of Rasin's sedan suffered considerable damage. The radiator was bent in and broken, and there was a trail of water on the pavement extending from the rear of the sedan to the place where the impact occurred. The bumper was bent back an inch at a point about six inches to the left of the center and thrown out of alignment about four inches to the left. The left headlight was bent backward and the hose between the radiator and engine was ruptured. On the left-hand side of the hood and on the radiator directly under the radiator cap there were finger smears and there were small fibers of clothing on the tip of the left front fender.

In view of the foregoing conflict in the evidence defendant proposed two instructions, designated in the record as defendant's proposed instructions 53 and 54, to the effect that if from the evidence it was "uncertain" as to whether the death of Mr. and Mrs. Bell was caused by the negligence of the defendant or of some unknown automobile driver, or if it was "just as likely" to have been occasioned by the negligence of one as the other, defendant was entitled to a verdict. The court refused to give said instructions and its refusal is assigned as error. Plaintiffs urge several objections to the form of both instructions which may have more or less merit, but aside from such objections we find no cause for reversal in the refusal of the court to give said instructions for even assuming that they correctly stated the law, the substance thereof was covered by two other instructions proposed by defendant, which the court gave. They are designated in the record as instructions numbered 38 and 39, and read as follows: "If you find from the evidence that Mr. and Mrs. Bell, the father and mother respectively of the plaintiffs in this action, were struck by an automobile which preceded that driven by the defendant Rasin, and were hurled to the roadway directly in front of Mr. Rasin's machine, and that in the exercise of ordinary care Rasin did not see the body of either of them, and un-

wittingly ran over one or more of them, and that in so doing he was acting in good faith and the exercise of such care as an ordinary prudent person would exercise, then your verdict must be in favor of said defendant." "You are instructed that upon the question as to whether the defendant should or should not have seen Mr. Bell, the father of the plaintiffs, when he was lying prostrate upon the ground and endeavoring to arise therefrom, if you find such to be the fact, you are not at liberty to indulge in any speculation or conjecture but in determining whether or not he, the defendant, was in the exercise of ordinary care, you must rely solely upon the evidence produced in this case, and if you find that there is not evidence showing that he failed to exercise ordinary care, that is the care of a reasonably prudent man, then your verdict must be in favor of the defendant." Moreover, in addition to the foregoing instructions the jury was fully instructed upon the subjects of burden of proof and preponderance of evidence. Therefore all of the elements contained in said instructions numbered 53 and 54 which were refused were embodied in the court's charge.

The defendant called as a witness an automobile repairman who, after testifying that he examined the condition of the Ford sedan some time following the accident, was asked the following question: "Can you state from the appearance of the radiator whether or not any blow of great violence had been struck it?" Plaintiffs objected to the question as calling for the conclusion of the witness and as being incompetent, irrelevant, and immaterial. The objection was sustained, the court stating that the question called for the conclusion of the witness; and, commenting further upon the matter, the court said that the witness would be permitted to state the condition in which he found the radiator, "whether it was jammed back or in what condition," but that the question as to whether or not it had been struck a blow of great violence was one for the jury. Following the suggestion of the court the witness was then asked to state in detail the condition in which he found the radiator, which he did. Defendant assigns the ruling sustaining the objection as error, contending that "it was important for the defendant to show that the injury done to the Ford

was not such as could be anticipated had the Ford run into the two people and hurled one to the left and carried the other forward,'' as testified by plaintiffs' witnesses. We find no merit in the point, for the reason that the undisputed testimony shows that all of the damage sustained by the Ford was not confined to the radiator, and in any event the question of the anticipated injury which a Ford might sustain by striking two people as described by plaintiffs' witnesses was, as the trial court stated, to be determined by the jury.

Plaintiffs called defendant as an adverse witness, under section 2055 of the Code of Civil Procedure, and during the direct examination it was developed that about 4:30 o'clock on the day of the accident he had taken two drinks of whisky. On cross-examination he was asked by his own counsel: ''Were you at all under the influence of liquor at the time?'' The court, on objection of plaintiffs ruled that the question was not permissible. We find no error in the ruling. It was not charged in the complaint, nor asserted at the trial, so far as our attention has been called, that defendant was under the influence of liquor at the time of the collision, the only testimony on that point having come from the defense which was to the effect that the defendant was sober. Moreover, and in any event, the question of defendant's sobriety would relate only to the issue of the negligent operation of his automobile, and he makes no point on this appeal as to the sufficiency of the evidence to sustain the conclusions reached by the jury on that issue.

Further contention is made that in view of the fact that all of the plaintiffs but one were adults at the time of the happening of the accident, the instructions to the jury as to the measure of damages were too broad in their meaning. An examination of the instructions will show, however, that they are in the usual form, and if the defendant desired full and more elaborate instructions on this subject he should have prepared and presented the same to the court, or in some manner made known to the court his desire for clearer and more definite instructions; and having failed to do so he cannot complain for the first time on appeal. (*Townsend* v. *Butterfield,* 168 Cal. 564 [143 Pac. 760].) Moreover, defendant makes no claim that the amount of damages

finally awarded and for which judgment was entered is excessive.

The judgments are affirmed.

Tyler, P. J., and Cashin, J., concurred.