[Civ. No. 11195. Second Appellate District, Division Two.—February 3, 1937.]

HAROLD RASK ANDERSON et al., Respondents, v. HAL C. MOTHERSHEAD, Appellant.

Parker & Stanbury, Harry D. Parker, Raymond G. Stanbury and White McGee, Jr., for Appellant.

Entenza & Cramer and George P. Kinkle for Respondents.

WOOD, J.—Defendant appeals from a judgment in the sum of $10,000 in plaintiffs' favor entered upon the return of a jury's verdict. Plaintiffs, husband and wife, sued for damages suffered in a collision between an automobile in which Mrs. Anderson was seated and an automobile driven by defendant. The collision occurred in the evening of September 29, 1935, on El Camino Real, near its intersection with Seventh Street, in Hermosa Beach. Mrs. Anderson was seated alone in her car which was parked diagonally to the curbing on the east side of El Camino Real. Defendant's car, while proceeding northerly on El Camino Real, collided with the Anderson car. Plaintiffs claimed that defendant was intoxicated and that his car was being driven at a speed of from 35 to 40 miles per hour. Defendant denied the charge of intoxication and the testimony of plaintiffs concerning the speed at which he was driving. In his defense he stated that as he was approaching plaintiffs' automobile a third car turned into El Camino Real and proceeded south on the east or wrong side of the street at a considerable speed and that he struck plaintiffs' car while attempting to avoid colliding with the oncoming automobile. He stated that at the time of the impact he had reduced his speed from about 25 to 30 miles per hour to 2 to 5 miles per hour. Plaintiffs claim that the evidence establishes "a brain and spine injury to plaintiff Mary Anderson of the utmost gravity, disabling, crippling, and destroying the mental and emotional control of a normal, happy, healthy, cheerful and industrious woman, wife and mother to the point of a complete alteration in her character and

causing melancholia and despondency driving her to make two attempts upon her own life''. Defendant on the other hand claims that the evidence shows that Mrs. Anderson's injuries, ''if any at all were most trivial''.

Of its own motion the court gave the following instruction: ''The speed of any vehicle upon a highway in a business district in excess of 20 miles per hour is *prima facie* unlawful and therefore negligent unless the driver sought to be charged with negligence because of speed establishes by competent evidence that such speed in excess of 20 miles per hour did not constitute a violation of the basic speed law, defined to you in a preceding instruction.'' Section 513 of the Vehicle Code provides: ''Exceeding Prima Facie Limit Not Negligence as Matter of Law. In any civil action proof of speed in excess of any *prima facie* limit declared in section 511 hereof at a particular time and place shall not establish negligence as a matter of law but in all such actions it shall be necessary to establish as a fact that the operation of a vehicle at such excess speed constituted negligence.''

The action of the court in giving the jury the instruction above quoted was prejudicially erroneous. The rule prevailing in civil actions is set forth in section 513, above quoted. Clearly under this section the burden rested upon plaintiffs to establish as a fact that the vehicle of defendant was operated in a negligent manner. The court erroneously told the jury that this burden rested upon defendant. (*Pilcher* v. *Tanner Motor Livery,* 138 Cal. App. 558 [33 Pac. (2d) 58]; *Johnson* v. *Gokey,* 4 Cal. App. (2d) 497 [41 Pac. (2d) 193]; *Elmore* v. *County of Lassen,* 10 Cal. App. (2d) 229 [51 Pac. (2d) 481].) In the early days of automobile traffic absolute speed limits were provided by law. In later years the legislature enacted laws eliminating absolute speed limits. Different regulations are provided for criminal and civil actions, it being provided that in criminal actions the rate of speed in excess of certain limits is *prima facie* unlawful, while in civil actions proof of a rate of speed in excess of *prima facie* limits does not establish negligence as a matter of law. Administrative officers are authorized by law to erect signs on highways bearing the words ''speed limit''. From the various regulations and from the placing of speed limit signs on the highways great confusion has resulted, confusion which has not been confined to the layman. Even the lawyers

in conducting trials in personal injury actions often erroneously refer to speed limits in such a way as to cause doubt in the minds of the jurors on the subject of the speed regulations. The trial courts have frequently fallen into error on account of the manner in which the Vehicle Code is worded. It is necessary in order to have a fair trial of the issues in a case like the present one to have the jury clearly instructed so that they will be able to determine whether the proof establishes that the defendant was violating the law or was guilty of negligence.

■ Defendant assigns some ten instances in which he claims that the trial court was guilty of prejudicial misconduct which resulted in his being deprived of a fair trial. The record will be quoted in so far as it bears upon one of those assignments. ''Q. By the court: You saw Mr. Anderson's car when you were a block and a half away? A. Just about that. Q. How did you happen to hit it then? A. I was trying to dodge an oncoming car. Mr. McGee: We will mark this M–1. The Court: So you took a chance as to which car you would hit, and you hit Mr. Anderson's car. A. I did not hit head on. Q. In other words, to save you being hit by this other car; you chose to hit Mr. Anderson's car? A. I did not choose to hit any car; I thought I could stop before I would hit anything or be hit. Q. But you did hit Mr. Anderson's car, and Mr. Anderson's car was parked? A. Yes. Q. And you had had two drinks at least? A. Yes. The Court: That is all I want to know. Mr. McGee: May we approach the bench? The Court: Yes, if you want to, but it seems that you ought to be able to try a lawsuit without continually coming up to the bench to ask how to try it. Mr. McGee: That wasn't my purpose. The Court: Very well. (At which time the following proceedings were had at the bench and outside the hearing of the jury): Mr. McGee: The defendant makes a motion for a mistrial on the grounds of prejudicial misconduct of the court in the questions just asked of the witness. The Court: The motion is denied.''

It would be but natural for the jury to believe that the judge looked with disfavor upon defendant's statements concerning the circumstances of the collision. The error was made worse by the court's remarks which tended to discredit defendant's counsel with the jury. The words of the court in *McMinn* v. *Whelan,* 27 Cal. 300, may appropriately be

quoted here: "From the high and authoritative position of a judge presiding at a trial before a jury, his influence with them is of vast extent, and he has it in his power by words or actions, or both, to materially prejudice the rights and interests of one or the other of the parties. By words or conduct he may on the one hand support the character or testimony of a witness, or on the other may destroy the same, in the estimation of the jury; and thus his personal and official influence is exerted to the unfair advantage of one of the parties, with a corresponding detriment to the cause of the other."

 In its instructions to the jury the trial court stated: "because manifestly if Mr. Mothershead isn't liable, then no matter how terribly Mrs. Anderson may have been injured, he, of course, would not be liable. It would be a terrible and a sad thing, but one for which he could not be compelled to pay." In view of the claim made by plaintiff that the injuries suffered by Mrs. Anderson were extremely serious and in view of the claim made by defendant that the injuries were most trivial, each of which claims was supported by expert medical testimony, it is apparent that the court erred in using the words "a terrible and a sad thing", words which naturally would be considered by the jurors as referring to Mrs. Anderson's injuries, and which would cause them to believe that the court regarded her injuries as "terrible".

 The fact that defendant was insured was improperly presented to the jury. Although it is unnecessary to decide whether or not this fact alone would be sufficient to justify a reversal of the judgment, since the case must be returned for a new trial it is appropriate to consider at this time this issue raised by defendant. Early in the trial counsel for defendant approached the bench and informed the court and opposing counsel that some mention had been made of insurance at the scene of the accident and a discussion followed on the subject of the admissibility of evidence on this point. Counsel for plaintiffs admits that he knew what evidence to expect on the subject. On four different occasions during the trial evidence was introduced concerning purported statements made by defendant in which defendant stated or implied that he was insured. George Briggs, a witness for the plaintiffs, in answer to a question by plaintiffs' counsel concerning the conversation between Mr. Anderson and defendant stated: "A.

He says, 'I did not see the car, and it is all my fault,' and he said, 'The insurance company will take care of everything'.'' During the direct examination of plaintiff Harold Anderson, in response to questions concerning a conversation with defendant, the witness testified: "A. Well, I asked him if he was driving that car, and he said he was, and I told him he had no business to drive the car in that condition, and he mumbled something about he couldn't help his actions, and that he did not see the car, and he said he was sorry, but he couldn't help it, but he says 'I have got full coverage.' He says, 'Everything will be taken care of'.'' During the cross-examination of defendant, plaintiffs' counsel asked: "Q. Now, you have mentioned that this car passed you; isn't it a fact that after this accident occurred, you got out of your car and you said to Mr. Anderson when you came over there, that you did not see the other car at all, that it was all your fault and that the insurance company would take care of the damages?'' The testimony was admitted for the purpose of showing admissions by defendant. It is unquestionably the rule that where the fact of insurance is connected with an admission, and the admission is one which ought to be considered it would not be error to permit testimony concerning the admission even if the question of insurance should thereby be placed before the jury. But it will be noted that in the instances just quoted it was not necessary to bring out the matter of insurance in order to fully cover the admissions made by defendant. This is particularly true of the question asked of defendant by plaintiffs' counsel, who, after being cautioned by opposing counsel, unnecessarily included the reference to insurance in his question. It is apparent that references to insurance should have been omitted. (*Dam* v. *Lake Aliso Riding School*, 6 Cal. (2d) 395 [57 Pac. (2d) 1315].)

The judgment is reversed.

McComb, J., *pro tem.*, and Crail, P. J., concurred.