[Civ. No. 13075. First Dist., Div. Two. Apr. 1, 1947.]

OVEL ELGIN BURCH et al., Respondents, v. VALLEY MOTOR LINES, INC. (a Corporation), Appellant.

---

Clark & Heafey and Yale S. Kroloff for Appellant.

Fitzgerald, Abbott & Beardsley, Wood, Crump, Rogers & Arndt and Guy Richards Crump for Respondents.

GOODELL, J.—This appeal was taken from a judgment entered on a verdict in favor of respondent Burch for $15,000 and respondent Baker for $8,459.80.

Respondent Burch was driving a tractor and semi-trailer loaded with freight, which vehicles were owned by respondent Baker. One Mossman was driving a tractor pulling two loaded freight vans, all belonging to appellant Valley Motor Lines. A collision involving both trains of vehicles occurred in the underpass at San Leandro Boulevard and 105th Avenue in Oakland, at about 7 p. m. on February 15, 1943. The underpass is about 730 feet in length over-all, the tunnel part being 405 feet long, 264 feet of which are straight. The highway throughout the underpass is 21 feet in width with one lane for eastbound and one for westbound traffic. The underpass is in the shape of a modified "S." The incline on the west end is on a 4 per cent grade and on the east a 2 per cent grade.

Both trains of vehicles were in their right lanes traveling easterly, respondents' train behind that of appellant's.

Appellant's train consisted of a two-axle Sterling Diesel tractor pulling two vans, each 22 feet long, both loaded with about 15 tons of mixed freight. The front van was hitched to and rested on the bed of the tractor. The rear van had one axle, and its front end rested on a dolly (which took the place of the front axle and wheels) to which it was attached by a king pin. On the front of the dolly was a two-pronged tongue or drawbar of cast steel, about 36 inches in length, in the general shape of the letter "A," the base of which was a part of the dolly itself and the apex of which was attached to the rear end of the front van by a pin-and-eye connection locked by a heavy spring. A safety chain from 7 to 7½ feet long, attached to the dolly, passed through loops on the prongs or legs of the drawbar, then through a clevis on the rear of the forward van and then doubled back, its end being hooked onto itself at some point along the drawbar. The purpose served by the chain was "to hold the vehicle being towed in the event the drawbar or other regular connection should

break or become disconnected'' as required by section 701 of the Vehicle Code. There was about one foot of slack in the chain so in case the drawbar was broken and the rear van was held only by the chain, it would be trailing about four feet behind the front van. Air brake hoses extending from the tractor to the rear van had attached to them appliances known as ''glad-hands'' and if anything broke them or knocked them off, the brakes on the rear van would automatically lock.

Respondent's train consisted of a Diamond T. tractor and semi-trailer about 35 feet long, weighing about 15 tons, and it carried a cargo of metal barrels containing oil weighing nearly 14 tons.

While traveling in the tunnel the front end of the tractor driven by respondent Burch crashed into the back of appellant's rear van with tremendous force, the impact causing serious injuries to respondent Burch, and pinning him in his cab. No question is raised as to the extent or seriousness of his injuries. It also seriously damaged the Baker trailer.

Mossman testified that as he drove through the tunnel about midway therein a small dog which had been running along the curbing suddenly ran across his path, and to avoid hitting the dog he applied his brakes; that shortly thereafter he felt two bumps, one immediately following the other. He brought his truck to a stop, got out and ran back, finding his rear van at a standstill. The front end of respondents' tractor was two or three feet behind the detached van, both of them in the eastbound lane. The base part of the broken drawbar was hanging attached to the rear van and its apex part was hanging attached to the front van. The fracture was somewhat irregular and both severed parts of the drawbar were twisted and bent.

It was and is the theory of appellant as stated in its brief ''that the collision occurred while the truck and trailer of defendant were connected by the steel drawbar, safety chain and air brake hoses, and just shortly after it had slowed down to avoid hitting a dog in the underpass. If the drawbar was broken by a rear end collision, it could only be broken by a compression force.''

The respondents' theory as stated in their brief, ''was, and is, that the trailer operated by Mossman, driver for defendant, was unhitched and standing still when struck by the truck operated by Burch, and that Mossman knew, or in the exer-

cise of reasonable care and intelligence could or should have known, that the drawbar connecting his truck and trailer was broken before the collision occurred, and sufficiently in advance of the collision to have enabled him to avoid the accident had he used reasonable care.''

Respondent Burch testified that because of the comparative darkness of the tunnel he could not and did not see the van ahead of him until too late. He testified that he first saw it when about 50 feet behind it, at which time he thought it was moving, but on getting closer (about 30 feet away) he saw it was stopped, and pushed his brake pedal down to the floor. Respondents' theory of course presupposes that both drawbar and chain had completely severed *before* the collision. Their basis for this contention is that Mossman had swerved to miss the dog at a point near the west entrance to the underpass and much farther westerly than Mossman placed the dog, and that in so swerving, the rear van had been jerked or whipped in such fashion as to break the drawbar and chain and break the ''glad-hand'' on the air hose, thereby automatically locking its brakes.

The foregoing statement fairly shows the conflicting theories on which the case was tried. There are of course many other facts in the case (including respondent Burch's testimony, denied by Mossman, that after the collision Mossman admitted that his rear van had become unhitched and was stalled before Burch hit it; also testimony of two witnesses driving in the opposite direction that the rear van was swaying badly when they passed it), but the facts stated are sufficient for an understanding of the principal question on this appeal. That question arises out of the court's refusal to admit certain opinion evidence.

Appellant's witness, Paul DeGarmo, is an associate professor of mechanical engineering on the faculty of the University of California, and his department is that of metallurgy. He testified to having had extensive experience in examining and testing metals, including their strength and behavior under complicated load conditions. The fractured drawbar was before the jury in two pieces, both distorted from normal shape. The purpose of the appellant clearly appears from its tender of proof which follows presently. After qualifying the witness and eliciting the answer from him that he had examined the drawbar and that it had no defects of any significance he was asked:

"Q. And did you also examine it for the purpose of determining what, in your opinion, caused it to break in that manner in which it is broken?

"A. I did; that was one of the primary purposes of the examination.

"Q. Now, in your experience I will ask you, Professor, whether or not you have conducted tests and whether or not you have examined metals in the past to determine the cause of any fracture that there may be in that metal?

"A. Yes, I have done so many times.

"Q. And after examining this drawbar, Professor, are you able to state to this court and jury what type of force it was that was necessary to cause this drawbar to be broken in the manner in which you see it?

"A. I can.

"Q. Will you kindly explain to the jury, please, Professor, the type of force necessary to break this drawbar?" To this respondents objected that such opinion would be an invasion of the province of the jury. After hearing argument in chambers the judge stated that he believed there were "sufficient facts in the record now from which the jury may draw deductions, make conclusions and draw inferences, without the aid of an expert." The appellants then made an offer of proof to the effect that the witness had made an inspection of this drawbar and the manner in which drawbars are connected up between trucks and trailers and that he could give an opinion concerning the type of force necessary to break the drawbar in the manner in which it was broken; that it was "a compression force and that was such a force as would be created by the striking of the trailer by another truck in the rear." Further: "We will also prove through this witness that under no circumstances, by reason of the condition of this drawbar as it is today, . . . could that drawbar have been broken by the swaying of these vehicles . . . Which would entirely negative the theory of the plaintiffs. In other words, he will testify that it could have been caused solely through a compression force and that it couldn't have been caused under any circumstances by the swaying of the vehicle on the highway, and we feel that is a matter that the jurors have no knowledge concerning."

There is no question raised as to the witness' qualifications, for before he left the stand appellant's counsel inquired if any point would be made in that behalf to which respondents'

counsel answered in the negative saying that the only objection was that it was "within the province of this jury to determine what happened without having some thirteenth juror to come in and testify to what happened."

The general rule is "that witnesses must testify to facts, and not to opinions, and that whenever the question to be determined is the result of the common experience of all men of ordinary education, or is to be inferred from particular facts, the inference is to be drawn by the jury, and not by the witness," (*Sappenfield* v. *Main St. etc. R. R. Co.,* 91 Cal. 48, 59 [27 P. 590]).

The question presented for decision is whether the proffered testimony was within that rule or whether it was within the purview of section 1870, subdivision 9, Code of Civil Procedure which provides that the opinion of a witness is admissible "on a question of science, art, or trade, when he is skilled therein," because it deals with "matters not presumably within the common knowledge of men" (*Callan* v. *Bull,* 113 Cal. 593, 607 [45 P. 1017]), and "was proper and necessary to an enlightened consideration and a correct disposition of the ultimate issue" (*Fonts* v. *Southern Pacific Co.,* 30 Cal.App. 633, 641 [159 P. 215]).

In the first place, it must be borne in mind that it has to be assumed for the purposes of this appeal that had the witness been permitted to testify, his testimony would have been as indicated by the tender (*O'Conor* v. *Braly,* 112 Cal. 31, 37 [44 P. 305, 53 Am.St.Rep. 155]; 5 C.J.S. 331).

"Expert testimony has been uniformly sanctioned as proper, if not, indeed, well-nigh indispensable in many instances, particularly in jury trials, to the crystallization of intelligent and just results. Under the common law the admissibility of the opinion of experts upon matters within the field of their knowledge was well established. . . ." (10 Cal.Jur. 957.)

It might be added that section 1870, subdivision 9 is but a legislative enactment of the common law rule. (*Estate of Toomes,* 54 Cal. 509, 513 [35 Am.Rep. 83].)

The testimony of an expert is admissible "because a man's professional pursuit, his peculiar skill and knowledge in some department of science, not common to men in general, enable him to draw an inference, where men of common experience, after all the facts proved, would be left in doubt." (10 Cal. Jur. 958.)

The testimony sought from this admittedly qualified witness had to do with a mechanical appliance made of cast steel. The witness was a metallurgist who had examined it in a laboratory and who was prepared to state his findings and opinion based on that examination, and on the condition and appearance of the drawbar, as to how it had been fractured. The general rule with respect to such matters is stated at 32 Corpus Juris Secundum 229, 230 as follows:

"An engineer or a person having engineering skill derived from practical experience may state an inference or judgment as to matters within the range of such knowledge or experience, as, for example, . . . the manner in which certain devices or appliances operate; the cause of certain occurrences, such as the breaking of a structure or device, . . . or the effect or result of other phenomena; . . ."

■ There are numerous cases in this state holding that expert evidence should be admitted on such questions, among them the following: *Callan* v. *Bull*, 113 Cal. 593 [45 P. 1017] (involving the improper construction of trestle work); *Chico Bridge Co.* v. *Sacramento Transportation Co.*, 123 Cal. 178 [55 P. 780] (collision of a barge with bridge pier); *Silveira* v. *Iversen*, 128 Cal. 187 [60 P. 687] (soundness of rope); *McFaul* v. *Madera etc. Co.*, 134 Cal. 313 [66 P. 308] (relative strength of wrought and cast iron); *Snyder* v. *Holt Mfg. Co.*, 134 Cal. 324 [66 P. 311] (insufficiency of a bolt and nut connection on a harvester); *Dyas* v. *Southern Pacific Co.*, 140 Cal. 296 [73 P. 972] (cause of fracture of a pivot on a derrick and insufficiency of counter-balance thereon); *Berkovitz* v. *American River Gravel Co.*, 191 Cal. 195 [215 P. 675] (distance within which an automobile could be stopped traveling at a given speed, and whether certain damage to a truck could have been caused by an automobile traveling at a given speed); *Bowen* v. *Sierra Lumber Co.*, 3 Cal.App. 312 [84 P. 1010] (bolts and mortises in bridge structure versus nails); *McLain* v. *Dahlstrom etc. Co.*, 19 Cal.App. 475 [126 P. 391] (insecure tying of a knot in elevator apparatus); *Fonts* v. *Southern Pacific Co.*, 30 Cal.App. 633 [159 P. 215] (proper method of unloading a steel shaft from freight car); *Lemley* v. *Doak Gas Engine Co.*, 40 Cal.App. 146 [180 P. 671] (cause of fracture of fly-wheel); *Vedder* v. *Bireley*, 92 Cal.App. 52 [267 P. 724] (inadequacy of automobile brakes); *Young* v. *Bates Valve Bag Corp.*, 52 Cal.App.2d 86 [125 P.2d 840] (necessity for protection around electrical apparatus); *Wallace* v. *Speier*,

60 Cal.App.2d 387 [140 P.2d 900] (necessity for inspection of plumbing fixtures, and the frequency thereof).

The opinion in *Fonts* v. *Southern Pacific Co., supra,* contains a lengthy discussion of the rule and cites many cases from this and other states. In *Wallace* v. *Speier, supra,* the court in speaking of subdivision 9, section 1870 said: "To attach to that section limitations of the nature proposed by the defendants would be to restrict unduly the province of the opinion evidence, for if that section is to have any degree of efficacy, then of necessity it must be viewed in the light of liberality. It might be said with little fear of contradiction, that rarely, if ever, does an expression of opinion by a so-called expert not amount to that which either the court or jury might adopt as a basis for the ultimate decision in the case. However, that does not mean that the witness is deciding the case or that in so testifying he is usurping the functions of the jury. He is merely giving an opinion based upon his technical training which the court may or may not accept as testimony that 'was proper and necessary to an enlightened consideration and a correct disposition of the ultimate issue.' (*Fonts* v. *Southern Pacific Co.,* 30 Cal.App. 633, at p. 641 [159 P. 215].)"

In *Lemley* v. *Doak Gas Engine Co., supra,* there is a lengthy discussion of the rule and (quoting from 1 Greenleaf on Evidence, 16th ed. 551) the court holds that *if the witness can add instruction over and above what the jury are able to obtain from the data before them* the opinion should be received. Respondents concede that that case is authority in appellant's favor but they level a criticism against it which we do not consider valid. They point out that the witness who gave his opinion as to what caused the fly-wheel to break was "almost an eye-witness" who had been working at the scene all day. That is true, but still there is no escape from the fact that the part of his testimony which expressed his judgment as to the cause, was opinion evidence pure and simple. What he had observed that day might have helped to qualify him to give his opinion, but the fact that he could and did give eye-witness testimony as to facts and occurrences did not make him any the less an expert witness on the fly-wheel question. As we read *Inyo Chemical Co.* v. *City of Los Angeles,* 5 Cal.2d 525, 539 [55 P.2d 850], it recognizes *Lemley* v. *Doak Gas Engine Co.* as authority on the admissibility of expert evidence *generally,* for there was no hypothetical question involved in the Lemley case.

*Lemley* v. *Doak Gas Engine Co.* holds that expert testimony is not to be rejected simply because it goes to the ultimate issue in the case. In the case at bar the ultimate question which the jury had to answer (contributory negligence having been pleaded) was, *Whose negligence caused this collision or contributed thereto?* In seeking such answer the subsidiary and secondary inquiry was relevant and proper i. e., *Whether the drawbar was broken by a side-to-side jerking, swaying or whipping motion on the one hand, or by a blow from the rear on the other,* provided the answer to this second question might aid in answering the first. We think it would have so aided.

The rejected testimony would not have been subject to the criticism that it coincided with the ultimate issue, for conceivably the jury might be convinced that the drawbar was fractured by a blow from the rear, and still conclude that appellant was guilty of negligence. The appellant concedes this. It is not necessary, therefore, to discuss *Sim* v. *Weeks,* 7 Cal.App.2d 28 [45 P.2d 350] or *People* v. *Wilson,* 25 Cal.2d 341 [153 P.2d 720], although it might be remarked that the latter case says there is no hard and fast rule on the subject.

Respondents also concede that *Berkovitz* v. *American River Gravel Co.,* 191 Cal. 195, *supra,* is authority in appellant's favor, but they characterize the court's holding as "cryptic." The court there definitely held that it was error to shut out the expert evidence, and the basis for the holding seems to be that an opinion may be given based on reasoning from effect to cause. The piece of physical evidence there involved was the back of a truck and its rear axle. In further criticism respondents say that later cases are to the contrary, citing *Fishman* v. *Silva,* 116 Cal.App. 1 [2 P.2d 473], *infra,* and *Johnston* v. *Peairs,* 117 Cal.App. 208 [3 P.2d 617], *infra,* neither of which touches the point of the Berkovitz case for reasons given later on. Moreover, they are decisions which could not shake the authority of the higher court even if they were in point. The distinction between the Berkovitz case and cases like the two last cited is pointed out in *Lawrence* v. *Butler,* 79 Cal.App. 436 [249 P. 840], *infra.* The Berkovitz case has never been overruled.

The authorities hold that an expert medical witness may give his opinion as to the means used to inflict a particular injury, his reasoning being from effect to cause, the deduction being based on the condition and appearance of the wound

itself (*People* v. *Sampo,* 17 Cal.App. 135 [118 P. 957]; *Dow* v. *City of Oroville,* 22 Cal.App. 215 [134 P. 197]; *Perkins* v. *Sunset Tel. & Tel. Co.,* 155 Cal. 712 [103 P. 190]). In the Berkovitz case it was held that the court erroneously sustained an objection to expert testimony as to whether the damage to the truck as shown by the evidence in that case "could have been caused by the Dodge car traveling at a speed of twenty miles an hour." In so holding the court apparently drew an analogy from the three cases just named involving medical testimony, which cases it cites.

It is difficult to find any distinction between the testimony of a surgeon with an X-ray picture before him, pointing out to a jury a fracture and explaining the direction from which the force came which caused it, and the proffered evidence in this case, where the drawbar itself was before the jury and the witness was prepared to explain (so the tender showed) the kind of force or blow by which it was fractured, and to testify, also, as to what his laboratory examination of the drawbar disclosed and the conclusions he drew from such examination. Hence we cannot follow counsel's argument that "The drawbar was in court and the jury could look at it and inspect it, as well as could the so-called experts" and that "neither DeGarmo nor Larson did anything but look at the broken drawbar. This the jury could do and did. Hence both DeGarmo and Larson in effect were simply called as additional jurors." The point need not be labored that a doctor, engineer, or other skilled witness looks at a piece of evidence with trained and discerning eyes and can readily discover therein significant factors about which a lay juror would have no knowledge whatever.

In *Callan* v. *Bull,* 113 Cal. 593, *supra,* a case having to do with the construction of a trestle, the court said at pages 606-7:

"The matters sought to be shown by these witnesses—the weight of timber, the amount of strain to which a given piece of timber can be subjected before breaking, the difference of resistance to such strain between a cylindrical and a square piece of timber, and between different kinds of timber, the amount of weight that would be concentrated at the different points of the stringers at which the cables suspending the mat were attached—were matters not presumably within the common knowledge of men, and were eminently proper to be shown by those who had made these subjects a matter of spe-

cial study. (*Prendible* v. *Connecticut River Mfg. Co.*, 160 Mass. 131 [35 N.E. 675]).'' Paraphrased and transposed to a steel casting instead of a timber structure, we think that statement might well be applied to the instant case.

Respondents rely on a number of California cases which they contend support the court's ruling. *Fishman* v. *Silva*, 116 Cal.App. 1, *supra*, one of them, involved a collision between two automobiles on a wet highway. The appellant there tendered as an expert witness an experienced garage man and mechanic who had cleared away many wrecks, and whose opinion was sought ''concerning the probable course the respective cars would take after the impact.'' The court said that ''Experience has shown the futility of attempted demonstration in accident cases; there are too many varying factors. Among these variants we may class indefinite rate of speed, condition of the highway, judgment or lack thereof in the drivers, a direct blow or a glancing one, and the balance or equilibrium of each car at the time of impact.'' Later it remarked that no expert ''can even venture an opinion as to what two different people might do in the management of a car in an emergency.'' These statements clearly show the reason why the tendered testimony was held improper.

That case is typical of a group of similar cases cited by respondents where there was an unsuccessful attempt to reconstruct what had happened, by persons who were not eyewitnesses and with nothing on which to base their opinions but the position of the cars after they had come to rest. This group consists of *Johnston* v. *Peairs*, 117 Cal.App. 208, *supra; Rudat* v. *Carithers*, 137 Cal.App. 92 [30 P.2d 435]; *Linde* v. *Emmick*, 16 Cal.App.2d 676 [61 P.2d 338], and *Moore* v. *Norwood*, 41 Cal.App.2d 359 [106 P.2d 939], all of which follow *Fishman* v. *Silva*, and in several of which hypothetical questions were held improper for the additional reason that they omitted important elements. *Moniz* v. *Bettencourt*, 24 Cal.App.2d 718 [76 P.2d 535] is of the same type and applies the same rule without, however, citing *Fishman* v. *Silva*. With respect to opinions drawn merely from such ''reconstruction,'' *Holt* v. *Yellow Cab Co.*, 124 Cal.App. 385, 388 [12 P.2d 472], says: ''Too many factors enter into an automobile collision to give certainty to any such conclusion.'' This concisely states the rationale of these decisions, and it is obvious that none of them has any application to the present problem.

*Lawrence* v. *Butler,* 79 Cal.App. 436, *supra,* simply holds that certain objections to hypothetical questions were properly sustained because they omitted important elements. What the court superadds, by way of dictum to the effect that the matter sought to be developed was problematical and not determinable "from like experiences or as a result of professional research, which is substantially the basis of expert testimony" places the case square within the category just discussed. The opinion distinguishes *Lawrence* v. *Butler* from the Berkovitz case, as already indicated, without questioning its authority.

*Kroll* v. *Rasin,* 96 Cal.App. 84 [273 P. 820], is another case where an automobile repair man was asked for an opinion as to what had happened, based on the appearance of a radiator "whether or not any blow of great violence had been struck it." In holding the question improper the court said that the damage to the car was not confined to the radiator, and the damage which might be anticipated from the car striking two people was for the jury.

In *Hughes* v. *Warman Steel Casting Co.,* 174 Cal. 556 [163 P. 885], the plaintiff had lost the sight of one eye by a flying nail from the casting on which he was working with a chisel and hammer. The defense, in attempting to prove contributory negligence by showing that he was standing in the wrong position at the casting, asked an expert witness whether it was "possible" or a "physical impossibility" for a flying nail to hit him if he was standing at the side instead of in front of the casting. The court held that it was not a matter of expert evidence whether it was "possible" for the plaintiff to be struck, such not being a question of science, art, or trade. When this objectionable question as to *possibility* is compared with the question held objectionable in *Fishman* v. *Silva* "concerning the *probable* course the respective cars would take after the impact" (emphasis ours) the reason for the exclusion would seem to be the same as that underlying the group of cases just discussed, particularly as there was eyewitness testimony that Hughes was standing at the side (as he had been instructed to do) and even then the nails "would fly in all directions—sometimes twenty feet— 'just go wild' . . . striking the windows and doors and walls of the working-room."

*Davis* v. *Connecticut Fire Ins. Co.,* 158 Cal. 766 [112 P. 549, 32 L.R.A.N.S. 604], simply holds that opinion evidence

was inadmissible as to whether a building fell as the result of earthquake or of the fire which followed it. The discussion is very brief, the court saying.that "the entire evidence showed conclusively that the earthquake caused the fall, and there was not even an attempt to show the contrary. The refusal to allow the question was therefore not injurious to the defendant."

In *Hunton v. California Portland Cement Co.*, 50 Cal.App. 2d 684, 696 [123 P.2d 947], the question ruled out was whether the shoulder of a highway could safely carry defendant's truck. The court held the ruling proper because this was observable by anyone and was a matter of common knowledge.

*Hastings v. Serleto*, 61 Cal.App.2d 672 [143 P.2d 956] holds that a person of ordinary intelligence, having opportunity for observation, is competent to testify as to the speed of an automobile.

*Sappenfield v. Main St. etc. R. R. Co.*, *supra*, holds that the jury could judge with respect to the insecurity of a pin on a horse-drawn street car—a simple contrivance—just as well as an expert could.

Hugo J. Larson, a witness for appellant, was the superintendent of the manufacturing department of Fruehauf Trailer Company (which had built the appellant's vehicles) and who had had 25 years' experience with tractors and trailers. He was asked for his opinion as to what caused this drawbar to break, based on his experience. The court sustained an objection, expressing the view that the question called for his conjecture or guess. A tender was made substantially the same as that heretofore discussed, and it was rejected. If this witness was held to be qualified—a matter within the discretion of the trial judge—then his testimony was just as admissible as that of Professor DeGarmo. There was not, however, the same admission respecting his qualifications as in the case of the other witness, and we therefore refrain from passing upon his qualifications.

■ We are satisfied that the court erred in refusing the instruction tendered by appellant, which was based on a part of section 511 of the Vehicle Code.

The appellant tendered, but the court refused to give, the following instruction:

"You are instructed that the Vehicle Code of the State of California in full force and effect at the time of the accident in question, provided as follows:

"511. Prima facie speed limits.

''(Speed not in excess of limits lawful unless clearly violative of basic rule.) The speed of any vehicle upon a highway not in excess of the limits specified in this section or established as authorized in this code is lawful unless clearly proved to be in violation of the basic rule declared in Section 510 hereof.

''(Prima facie limits: Applicability: Signs noticing changed limits.) The prima facie limits referred to above are as follows and the same shall be applicable unless changed as authorized in this code and, if so changed, then only when signs have been erected giving notice thereof, in which event the speed designated on the sign shall be the prima facie limit:

''(a)   Fifteen miles per hour: . . .

''(3) When approaching or upon a curve or any other part of a highway in the event the driver's view is obstructed within a distance of 100 feet along the highway in the direction in which such driver is proceeding.''

It is argued that such refusal was erroneous because it left the jury without any knowledge of the prima facie speed limit. This seems to be so, and the failure to give it is accentuated by the fact that the jury was instructed on section 513 (which section and which instruction *make reference to 511*) as follows:

''Section 513:   Exceeding prima facie limit not negligence as matter of law.   In any civil action proof of speed *in excess of any prima facie limit declared in Section 511 hereof* at a particular time and place shall not establish negligence as a matter of law but in all such actions it shall be necessary to establish as a fact that the operation of a vehicle at such excess speed constituted negligence.''   (Emphasis added.)

They were also instructed on 510 as follows:

''Section 510. Basic speed law.   No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent having due regard for the traffic on and the surface and width of the highway, and in no event at a speed which endangers the safety of persons or property.''   But this gave the jury only a generalization, while section 511 would have given them a definite and specific (albeit prima facie) speed limit.

The failure to instruct on 511, the appellant points out, was particularly damaging because the zone on either side of the underpass was a 55 mile zone.

The respondents rely on *Westberg* v. *Willde*, 14 Cal.2d 360 [94 P.2d 590]; *Anderson* v. *Mothershead*, 19 Cal.App.2d 97 [64 P.2d 995] and *Akers* v. *Cowan*, 26 Cal.App.2d 694 [80 P.2d 143], and claim that section 511 should be given only in criminal cases. In *Westberg* v. *Willde*, 14 Cal.2d 360 [94 P.2d 590] where the trial court had given an instruction on section 511 *verbatim and in its entirety*, the court quoted from *Akers* v. *Cowan*, as follows:

"In *Akers* v. *Cowan*, *supra*, the District Court of Appeal reversed the judgment for plaintiff for instructions similar to those given in the instant case. There, as in the instant case, the court read both sections 511 and 513 to the jury. The court held that the effect of reading both provisions to the jury was to give conflicting instructions. The court said:

" 'In connection with the *prima facie* speed limits thus given to the jury *the above instruction included the second paragraph of Section 511 of the Vehicle Code, which sets forth the rule applicable in criminal actions* where a defendant is charged with traveling on a highway at a rate of speed higher than the *prima facie* limits set forth in that section. In such a case the burden is placed upon the defendant of proving that any speed in excess of these limits did not constitute a violation of the basic rule set forth in Section 510. A contrary rule prevails in civil actions, which rule is set forth in Section 513 of this code. The question of speed was here material and important and the giving to the jury of this wrong instruction with reference to the burden of proof in connection with that issue was plainly erroneous. (*Anderson* v. *Mothershead*, 19 Cal.App.2d 97 [64 P.2d 995].)' " (Emphasis added.) The part of the quotation to which we have given emphasis clearly explains that it is *the second paragraph only* of section 511 which is banned in civil cases. In the case at bar the second paragraph was not tendered.

No authority cited herein goes any further than that. In *Westberg* v. *Willde* the section was given *in its entirety*.

There was testimony in this case (that of Freitas and Toscano) that Burch was driving at a speed of 25 to 30 miles per hour through the tunnel just before the crash (in fairness it should be added that they testified Mossman was doing the same). Respondent Burch himself admitted that his speed was "20 or 25 miles an hour" just before the van loomed up ahead of him, which distance he put at about 50 feet. The underpass was curved in shape. Thus there was evidence upon

which such an instruction could have been supported as conforming to the appellant's theory of the case, for contributory negligence was in issue.

The appellant contends that there is no evidence in the record to sustain the implied finding of the jury that it was negligent in the operation of its truck and trailer. There is evidence in the record wholly apart from the admission which Mossman is claimed to have made, from which inferences of appellant's negligence could have been drawn.

We are satisfied also that the motion for nonsuit was properly denied (9 Cal.Jur. 551-553, § 35).

This case has been ably and thoroughly briefed on both sides and in addition to the California cases herein discussed, numerous out-of-state authorities have been cited. We find it unnecessary to discuss the cases from other jurisdictions.

We are satisfied that there was prejudicial error in the rejection of the tendered evidence of the witness DeGarmo and in the refusal of the tendered instruction.

The judgment is reversed.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied May 3, 1947, and respondents' petition for a hearing by the Supreme Court was denied May 29, 1947. Carter, J., voted for a hearing.